ORIGINAL ent JS6



1

2

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE, MOST RECENT, ADDRESS OF
RECORD, IN THIS, TION, ON THIS DATE.

DATED: 7-20-99

DEPUTY CLERK

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    SOUTHERN DIVISION

11   CHARLES T. MADDEN, et al.,      )   SA CV 98-1089 AHS (EEx)
                                     )
12              Plaintiffs,          )
                                     )
13        v.                         )   ORDER (1) DENYING PLAINTIFFS'
                                     )   MOTION TO REMAND, AND
14   DELOITTE & TOUCHE, LLP, VOLPE   )   (2) GRANTING DEFENDANTS'
     BROWN WHELAN & COMPANY, SETH    )   MOTION TO TRANSFER
15   FLAM, STEVEN M. LASH, STEPHEN J.)
     DRESNICK, JAMES A. LEBOVITZ, and)
16   DOES 1 through 50, inclusive,   )
                                     )
17              Defendants.          )
     _____)

18

19                              I.

20                  PROCEDURAL BACKGROUND



21        On January 29, 1999, plaintiffs filed a motion to

22   remand and for an award of attorneys fees and costs.  On February

23   8, 1999, defendants filed opposition.  Plaintiffs filed their

24   reply on February 16, 1999.  On February 1, 1999, defendants

25   filed a motion for transfer of venue.  On February 8, 1999,

26   plaintiffs filed opposition.  Defendants filed their reply on

27   February 16, 1999.  On February 11, 1999 defendant Volpe Brown

28   Whelan & Company filed a motion to dismiss.  Plaintiffs filed

Docketed

Mld copy Ptys
Mld Notice Ptys
JS-6

ENTERED ICMS 11157

1  opposition on February 19, 1999.  On March 1, 1999, defendant

2  Volpe filed its reply.  The Court issued a notice of taking the

3  motions under submission on March 4, 1999.

4         With respect to plaintiffs' motion to remand the action

5  to state court, plaintiffs filed a corrected request for judicial

6  notice on January 29, 1999, attaching copies of (a) the

7  Securities Litigation Uniform Standards Act of 1998, Public Law

8  No. 105-353 (1998) (the "Uniform Standards Act"); (b) the

9  Committee of Conference, Conference Report: Securities Litigation

10 Uniform Standards Act of 1998, House Report 803, 105th Congress,

11 2d Session (1998); (c) House Committee on Commerce, Report:

12 Securities Litigation Uniform Standards Act of 1998, House Report

13 640, 105th Congress, 2d Session (1998), and (d) Senate Committee

14 on Banking, Housing, and Urban Affairs, Report: Securities

15 Litigation Uniform Standards Act of 1998, Senate Report 182,

16 105th Congress, 2d Session (1998).  On March 18, 1999, plaintiffs

17 filed a supplemental request for judicial notice in support of

18 plaintiffs' motion to remand the action to state court, attaching

19 the SEC Order declaring the registration statement effective

20 dated February 17, 1998.

21        With respect to defendants' motion to transfer venue,

22 plaintiffs filed a request for judicial notice on February 8,

23 1999, attaching the dismissal of plaintiff Leon Goldberg, M.D.,

24 and a supplemental request on February 24, 1999, attaching the

25 declaration of Gary G. Mackie from the Amin, et al. V. SG Cowen

26 Securities Corporation case, SA CV 99-12-AHS (EEx).

27        All of plaintiffs' requests for judicial notice are

28 granted.

1    Based on plaintiffs' First Amended Complaint
2    (hereafter, Complaint), the parties' submissions, and the Court's
3    independent research, the plaintiffs' motion to remand is denied
4    and the defendants' motion for transfer of venue is granted.

5                                **II.**

6                          **FACTUAL SUMMARY**

7         This case arises out of the Agreement and Plan of
8    Merger, executed on or about January 21, 1998, for the merger
9    between (1) St. Joseph Medical Corporation (SJMC), Orange Coast
10   Managed Care Services, Inc. (OCMCS), and (2) FPA Medical
11   Management, Inc. (FPA).  SJMC was a California Professional Corp.
12   which consisted of St. Joseph Independent Practice Assn. and St.
13   Joseph Medical Group.  The only post-merger entity was an FPA
14   entity.

15        The action is brought by plaintiffs numbering in excess
16   of 50 who constitute the majority in interest of the shareholders
17   of each of the former companies, OCMSC and SJMC.  Plaintiffs
18   tendered their OCMSC and SJMC stock holdings in exchange for
19   securities in FPA on or about March 20, 1998, in connection with
20   the acquisition of OCMCS and SJMC by a wholly owned subsidiary of
21   FPA, receiving no cash or other consideration but only FPA stock.
22   FPA common stock is publicly traded on the NASDAQ stock exchange.
23   FPA is a national health care management service organization
24   that organizes and manages primary care physician networks for
25   the purpose of contracting with health maintenance organizations
26   (HMOs) and other prepaid insurance plans to provide physician and
27   related health care services.  (Complaint, ¶9.)  Plaintiffs
28   allege that their approval of the "stock for stock" merger was

                                3

1 induced by fraudulent misconduct, negligent misrepresentation,

2 and negligent conduct of the defendants.   (Complaint, ¶2.)

3      After the merger, FPA issued an announcement in May,

4 1998, concerning its actual and projected earnings.   The price of

5 FPA's stock subsequently fell, and later in the year FPA

6 initiated voluntary bankruptcy proceedings.

7      Plaintiffs allege that the defendants induced the

8 merger and FPA acquisition of the assets of the OCMCS and SJMC,

9 whose combined value in March 1998 was worth approximately $60

10 million by various forms of misconduct.   Plaintiffs set forth

11 claims under the Securities Act of 1933 (§12(a)(2), § 11, and §

12 15 for the first three causes of action), California Corporations

13 Code §§25401 and 25501, intentional misrepresentation, and

14 negligent misrepresentation against enumerated defendants.

15      Specifically, plaintiffs allege that FPA principals

16 persuaded plaintiffs to approve the Merger through misleading

17 financial statements in which their auditors Deloitte & Touche

18 gave negligently or recklessly misleading audit opinions, through

19 misrepresentation by their financial advisor, Volpe Brown Whelan

20 & Co., and that FPA's officers and directors falsely represented

21 that FPA was a sound business that utilized financially

22 conservative accounting procedures and whose prospects for

23 continued financial stability and success were excellent.

24 (Complaint, ¶2).   In that same paragraph, plaintiffs note that

25 defendants likewise persuaded thousands of investors, in addition

26 to plaintiffs named herein, to purchase FPA stock in 1997 and

27 early 1998.   After the merger, plaintiffs discovered the falsity

28 of the financial statements and publicly filed documents, the

1  falsity of Deloitte's audit opinion, and the falsity of other

2  misrepresentations, during a period in which plaintiffs were

3  contractually barred from selling their shares in FPA.

4          Plaintiffs name as defendants Deloitte & Touche LLP,

5  Volpe Brown Whelan & Company, and officers and directors of FPA,

6  Seth Flam (previously President and Chief Executive Officer of

7  FPA, and member of FPA's Board of Directors), Steven M. Lash

8  (previously Chief Financial Officer of FPA), Stephen J. Dresnick

9  (President and Chief Executive Officer of FPA), and James A.

10  Lebovitz (FPA's Senior Vice President, General Counsel, and

11  Secretary).  Plaintiffs refer to a related case (the "FPA

12  Action") against FPA Medical Management Inc., FPA Medical

13  Management of California, Inc., Seth Flam, Steven M. Lash,

14  Stephen J. Dresnick, James A Lebovitz, Cowen & Company, Cowen

15  Incorporated, and does 1-50, pending in the Orange County

16  Superior Court, Case 796263. (Complaint, ¶5).  In that related

17  case, plaintiffs requested the dismissal of Flam, Lash, Dresnick,

18  and Lebovitz, proceeding against only the FPA entities, both of

19  which are protected by a stay order from the United States

20  Bankruptcy Court for the District of Delaware.

21          This action was filed in the Orange County Superior

22  Court on November 18, 1998, and amended by a First Amended

23  Complaint filed on November 23, 1998.  It was removed to the

24  United States District Court for the Central District of

25  California on December 8, 1998, on the basis that federal

26  question jurisdiction exists.

27  //

28  //

III.

DISCUSSION

A.      Motion to Remand

        1.  Provisions for Removal

        In Sullivan v. First Affiliated Securities, Inc., 813
F.2d 1368, 1371 (9th Cir. 1987), the Court of Appeals for the
Ninth Circuit held that "[t]he burden of establishing
jurisdiction falls on the party invoking the removal statute."
In their Corrected Notice of Removal, filed December 23, 1998,
defendants allege that they are entitled to remove this action
pursuant to 28 U.S.C. §§ 1441(b) and (c) as plaintiffs have
asserted causes of action founded upon an alleged claim or right
arising under the laws of the United States.

        The federal law upon which the defendants base this
assertion is the Securities Litigation Uniform Standards Act of
1998 ("Uniform Standards Act"), Pub. L. No. 105-353, enacted on
November 3, 1998.  Its removal provision states that "any covered
class action brought in any state court, involving a covered
security, as set forth in subsection (b), shall be removable to
the Federal district court for the district in which the action
is pending, and shall be subject to subsection (b)."  Uniform
Standards Act, §101; 15 U.S.C. §77p(c); 15 U.S.C. §78bb(f)(2), as
amended.  The defendants bear the burden of proving that this
case is covered by the Uniform Standards Act of 1998.

        One of the Congressional findings surrounding the
adoption of this Act was that "in order to prevent certain State
private securities class action lawsuits alleging fraud from
being used to frustrate the objectives of the Private Securities

1 | Litigation Reform Act of 1995, it is appropriate to enact
2 | national standards for securities class action lawsuits involving
3 | nationally traded securities, while preserving the appropriate
4 | enforcement powers of State securities regulators and not
5 | changing the current treatment of individual lawsuits."  15
6 | U.S.C. § 78a, n.5.

7 | **2.   Uniform Standards Act - Covered Action**

8 | As defined in the Uniform Standards Act, a "covered
9 | class action" is brought by more than 50 plaintiffs and alleges a
10 | violation of state law based on misrepresentations made involving
11 | a covered security.  Uniform Standards Act, §101; 15 U.S.C.
12 | §77p(c),(f)(2); 15 U.S.C. §78bb(f)(2), as amended.

13 | A "covered security" is defined as "a security that
14 | satisfies the standards for a covered security specified in
15 | paragraph (1) or (2) of section 18(b) at the time during which it
16 | is alleged that the misrepresentation, omission, or manipulative
17 | or deceptive conduct occurred, except that such term shall not
18 | include any debt security that is exempt from registration under
19 | this title pursuant to rules issued by the Commission under
20 | section 4(2)."  Uniform Standards Act, §101; 15 U.S.C. 77p(f)(3).
21 | A security is covered if it is listed, or authorized for listing
22 | on the New York Stock Exchange or the American Stock Exchange, or
23 | on the National Market System of the Nasdaq Stock Market.  §18
24 | (b)(1)-(2); 15 U.S.C. §77r(b)(1)(A).  Further, a security can be
25 | considered "covered" even if it is not listed on a national
26 | exchange, if it is of equal or greater "seniority" to a security
27 | of the same issuer that is so listed.  15 U.S.C. §77r(b)(1)(C).
28 | (emphasis added).  Listed means "admitted to full trading

privileges."  SEC Rule 3b-1; 17 CFR §240.3b-1 (1998).  The SEC
requires each issuance of stock to be the subject of a separate
registration statement.  Therefore, Nasdaq will not authorize the
listing of a security until the SEC has approved its
registration.

### 3.   The Parties' Contentions

Plaintiffs argue that the underlying litigation relates
to a merger of businesses resulting from a tender offer or
exchange offer of shares that were unmarketable on any national
exchange, and the action is therefore exempt from the scope of
the Uniform Standards Act.  They assert that this is not a "fraud
on the market" case of typical investors, but is one based on an
underlying agreement and relationships justiciable under
California law.

### a.   FPA Stock Listing

Plaintiffs argue that the FPA stock that plaintiffs
received was not listed on Nasdaq "at the time during which it is
alleged that the misrepresentation, omission, or manipulative or
deceptive conduct occurred."  Uniform Standards Act, §16(f)(3).

### i. 90-day Restriction

First, plaintiffs argue they received stock that could
not be traded on any exchange for 90 days following the merger.
Therefore, plaintiffs claim that the FPA stock failed to satisfy
the standards for a "covered security" of Section 18(b)(1)(A) of
the 1933 Act at the time of the misrepresentations.  Defendants
contend that the FPA stock was listed on Nasdaq and is a covered
security, notwithstanding the 90-day "lock-up" period.
Restrictions on sale do not establish that the stock is not

1 | listed.

2 | ### ii.   Listed or Approval for Listing

3 | Second, plaintiffs assert that the stock did not exist
4 | at the time the misrepresentations were made.  They were created
5 | in order to be issued after the misrepresentations were made,
6 | once plaintiffs had entered into the Merger Agreement.
7 | Plaintiffs argue that the FPA shares received by plaintiffs were
8 | issued pursuant to a Form S-4 Registration Statement specific to
9 | the merger.

10 | According to plaintiffs, negotiations leading to the
11 | merger commenced in October, 1997, and defendants'
12 | misrepresentations began no later than December 5, 1997.  In
13 | January, 1998, on the basis of defendants' misrepresentations,
14 | SJMC and OCMCS determined that the merger would be in the best
15 | interests of their shareholders, and they entered into the Merger
16 | Agreement on January 21, 1998.

17 | It was not until three weeks later, on February 11,
18 | 1998, that FPA filed its Form S-4 Registration Statement, which
19 | the SEC approved and declared effective on February 17, 1998.
20 | (Supplemental Request for Judicial Notice, Ex. K).  The Uniform
21 | Standards Act only applies to covered securities at the time
22 | during which it is alleged that the misrepresentation, omission,
23 | or manipulative or deceptive conduct occurred, and therefore,
24 | plaintiffs contend, this action is not covered.  Uniform
25 | Standards Act §16(f)(3).  Plaintiffs assert that the stock became
26 | a "covered security" on the date of the Effectiveness Order,
27 | February 17, 1998, after the misrepresentations by defendants
28 | which began no later than December 5, 1997, and after reliance by

plaintiffs on those misrepresentations in executing the Merger Agreement on January 21, 1998.   (Plaintiffs' Supplemental Request for Judicial Notice, Ex. K).

### b.   OCMCS/SJMC stock

Plaintiffs emphasize that the Merger transaction was a two-way exchange where plaintiffs gave up their stock in OCMCS and SJMC in order to receive stock in FPA.   The OCMCS and SJMC stock was never offered to the public, traded on any exchange, or registered with the SEC.   That stock was not a covered security under the Uniform Standards Act.

### c.   Exception to Uniform Standards for misrepresentations made exclusively to holders of equity securities of the issuer.

The Uniform Standards Act provides at, § 101(a)(1), §16(d)(1) for the following:

> (d) PRESERVATION OF CERTAIN ACTIONS —
>     (1) ACTIONS UNDER STATE LAW OF STATE OF INCORPORATION
>         (A) ACTIONS PRESERVED. — Notwithstanding subsection (b) or (c), a covered class action described in subparagraph (B) of this paragraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.
>         (B) PERMISSIBLE ACTIONS.  A covered class action is described in this subparagraph if it involves —
>             (i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>             (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that --
>                 (I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>                 (II) concerns decisions of those equity holders with respect to

voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

Subsection 16(d)(1) preserves state court jurisdiction over suits affecting conduct of corporate officers with respect to certain corporate actions, including tender offers, exchange offers, and the exercise of dissenter's or appraisal rights. House Report at 16, Ex. D at 45.

Plaintiffs argue that the foregoing language applies to the plaintiffs' Merger Agreement and to the misconduct of defendants inducing plaintiffs' agreement to it. The transaction was an exchange of OCMCS or SJMC shares for FPA shares, and thus an "exchange offer" or "tender offer" as described in both the Uniform Standards Act and its legislative history. Plaintiffs contend that although they were not "holders of equity securities" of FPA before the merger, the representations made by defendants - FPA's officers and directors, and its agents with respect to this merger transaction - survived into the period during which plaintiffs were holders of FPA securities. Pursuant to this agreement, those representations continue as if they were made anew until the first anniversary of the Closing date, March of 1999.

Further, the statute provides that actions to which the exception applies may be maintained in "a State or Federal Court." Nothing in this language requires an action falling within the exception to be filed in the courts of a particular state. Furthermore, the Merger Agreement specifically provides that it shall be governed by California law. There can be no

11

1 | question that this action was properly filed and should be
2 | maintained in the Superior Court of California.

3 | Defendants disagree, and argue that the plaintiffs are
4 | referring to the Delaware carve-out, which allows shareholders to
5 | sue in state court for a breach of a fiduciary duty of disclosure
6 | that is owed by corporations and their principals to their own
7 | existing shareholders under the laws of certain states. <u>Malone</u>
8 | <u>v. Brincat</u>, 722 A.2d 5, 13 (Del. 1998). Defendants note that
9 | the Senate Committee Report on the Uniform Standards Act explains
10 | that the Committee expressly did not intend for suits excepted
11 | under this provision to be brought in venues other than in the
12 | issuer's state of incorporation. S. Rep. No. 105-182, at 6 (May
13 | 4, 1998); <u>see also</u>, Uniform Standards Act, §101; 15 U.S.C.
14 | §77p(d) (as amended). Defendants point out that this action does
15 | not meet this criteria. Plaintiffs were not existing
16 | shareholders before the merger, nor do they allege that after
17 | they became shareholders, they were damaged by communications
18 | from FPA principals concerning how to vote their shares, how to
19 | act in response to a tender or exchange offer, or how to exercise
20 | their specified rights. Further, the suit was not brought in
21 | Delaware, FPA's state of incorporation, under Delaware law. Any
22 | post-merger representations do not relate back, as they were not
23 | communications "with respect to the sale of securities of the
24 | issuer," the sale of securities of the issuer having already
25 | occurred.

26 | Plaintiffs respond that nothing in the Delaware carve-
27 | out requires that a suit be brought in the state of
28 | incorporation. Even if the law of the state of incorporation is

1 | to be applied, this Court or the Superior Court could apply

2 | Delaware law.  Further, plaintiffs did not name FPA itself as a

3 | defendant.

4 |     **4.  Analysis and Disposition**

5 |     The Court's independent research has led to

6 | consultation of all available cases concerning interpretation and

7 | application of the Uniform Standards Act.  None of these cases[1],

8 | however, shed any light on the issues presented here.

9 |     This action is a covered class action.  It seeks

10 | damages on behalf of over 50 persons, and common questions of law

11 | and fact predominate; the complaint contains no allegations

12 | unique to any particular plaintiff.  Uniform Standards Act §101;

13 | 15 U.S.C. §§77p(b), (f)(2)(A), 78bb (f)(1), (5)(B)(as amended).

14 | The action is based on federal claims, the Securities Act of

15 | 1933, and on the statutory and common law of California and

16 | alleges the making of untrue statements or omissions of material

17 | facts.  Uniform Standards Act §101; 15 U.S.C. §§78p(b),

18 | 78bb(f)(1)(as amended).  The alleged misrepresentations were made

19 | in connection with the "purchase or sale" of a security as they

20 | related to the stock swap in the merger transaction between FPA

---

    [1]  Lalondriz v. USA Networks, Inc., 1999 WL 447442 (S.D.N.Y. 1999); Canty v. Old Rochester Regional School District, 1999 WL 436759 (D. Mass 1999); In re Advanta Corp. Securities Litigation, 1999 WL 395997 (3rd Cir. 1999); Marra v. Tel-Save Holdings, Inc., 1999 WL 317103 (E.D. Pa. 1999); In re Aetna Securities Litigation, 1999 WL 65451 (E.D. Pa. 1999); Lirette v. Shiva Corporation, 27 F. Supp.2d 268 (D. Mass 1998); In re Rational Software Litigation, 28 F. Supp.2d 562 (N.D. Cal. 1998); Eli Steinberg v. System Software Associates, Inc., 1999 WL 404617 (Ill. App. 1 Dist. 1999);  Malone v. Brincat, 722 A.2d 5 (Del. 1998); Diamond Multimedia Systems, Inc. v. Superior Court, 80 Cal. Rptr.2d 828 (1999).

1   and OCMCS/SJMC.   See e. g., Dasho v. Susquehanna Corp, 380 F.2d

2   262, 266-67 (7th Cir. 1967).   Numerous courts, including the

3   Supreme Court, have held that a merger is a sale or purchase of

4   securities.   Harriman v. E.I. DuPont de Nemours and Co., 411

5   F.Supp. 133, 157 (D.C. Del. 1975) (citing cases).

6       Plaintiffs' First Amended Complaint alleges that FPA is

7   publicly traded and that at the time of the merger FPA had common

8   stock trading on the Nasdaq stock exchange. (Complaint, ¶9).

9   Plaintiffs were to receive shares of FPA common stock.

10  (Complaint, ¶¶ 20, 21.)   The defendants satisfy their burden to

11  show federal jurisdiction for purposes of a removal by relying on

12  these allegations.   Accepting the SEC Order of February 17, 1998,

13  as establishing an effective date for the Registration Statement,

14  the Court nonetheless concludes that the FPA stock at issue in

15  the merger transaction is a "covered security" as defined by the

16  Uniform Standards Act.   Even if the securities received by

17  plaintiffs were not listed and there was a contractual limitation

18  on their sale, there is no showing that they were not of equal

19  seniority to the outstanding FPA common stock that was publicly

20  traded at the time of the merger.   The status of the OCMCS and

21  SJMC stock is not relevant.

22      Lastly, Section 101(a)(1) of the Uniform Standards Act,

23  §16(d)(1), does not apply to the circumstances of this case.   As

24  plaintiffs were not equity holders at the time of the merger

25  transaction, this action does not fall within the scope of this

26  provision.

27      For the foregoing reasons, defendants have demonstrated

28  that federal question jurisdiction exists.   Therefore,

14

1  plaintiffs' motion to remand is denied.

2

3  **B.        Defendants' Motion to Transfer**

4          A federal district court may transfer a civil action

5  "to any other district or division where it might have been

6  brought" when transfer will serve "the convenience of parties and

7  witnesses" or furthers "the interest of justice." 28 U.S.C. §

8  1404(a); <u>Hoffman v. Blaski</u>, 363 U.S. 335 (1960).  The movant has

9  the "burden to justify by particular circumstances that the

10 transferor forum was inappropriate." <u>Commodity Futures Trading</u>

11 <u>Commission v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).

12 Defendants have made the requisite strong showing for transfer,

13 and the Court grants defendants' motion.

14          **1.  The case could have been filed in the Southern**

15              **District of California.**

16          Under 28 U.S.C. §1391(b)(2), venue in non-diversity

17 cases is proper in any "judicial district in which a substantial

18 part of the events or omissions giving rise to the claim

19 occurred."  There may be several districts that qualify as the

20 location of "substantial activities," not necessarily only the

21 district where most of the events occurred.  <u>Neufeld v. Neufeld</u>,

22 910 F. Supp. 977, 986 (S.D.N.Y. 1996).

23          Defendants contend that in this case, where the

24 location that the misrepresentations occurred is only one

25 element, other essential issues include what the defendants knew

26 and when the defendants knew it.  FPA was at all relevant times a

27 San Diego-based company.  (Complaint, ¶¶9-10).  The individual

28 defendants are not alleged to reside elsewhere, and defendants in

1  fact assert that the individual defendants are residents of San
2  Diego County who worked in FPA's San Diego offices.  Defendants
3  further assert that D&T audited FPA in San Diego.  Therefore,
4  defendants contend the knowledge these defendants had regarding
5  FPA's financial condition was developed in the Southern District.
6  Defendants observe that most of the key events that relate to
7  FPA's financial deterioration occurred in San Diego.

8          This issue is uncontested.  Plaintiffs "do not dispute
9  Defendants' contention that this action 'might have been brought'
10  in San Diego, as required by 28 U.S.C. §1404(a)." (Plaintiffs'
11  Opposition at 10).  Plaintiffs themselves agree that the action
12  "might have been brought" in any number of California counties
13  where the defendants reside or have principal places of business,
14  as well as the county where the injury or breach occurred.
15  (Plaintiffs' Opposition at 10, citing Cal. Code Civ. Proc. §§
16  395(a), 395.2, 395.5).  Plaintiffs only contend that this is a
17  precondition to transfer and is not an independent factor
18  weighing in favor of transfer.

19          **2.  Related Litigation**

20          "Related litigation pending in the proposed transferee
21  forum is a factor that weighs heavily in favor of the transfer."
22  Coultman v. National R.R. Passenger Corp., 857 F. Supp. 231, 235
23  (E.D.N.Y. 1994); see also, Davidson v. Exxon Corp., 778 F. Supp.
24  910-11 (E.D. La. 1989).

25          Defendants contend that this lawsuit is one of twenty
26  related securities cases now pending in the federal district
27  courts arising out of the same events.  Eighteen of the twenty
28  actions, including some originally filed in the Central District

1   of Califonria, have been consolidated for pretrial purposes in

2   the Southern District of California.   In re FPA Medical

3   Management Inc. Securities Litigation, 98 CV 928-H (AJB).

4   (Declaration of Darryl Snider, Ex. 1: Consolidated Amended Class

5   Action Complaint For Violation of the Federal Securities Laws and

6   Supplemental State Law Claims, "CAC").

7           This case and the consolidated cases involve the same

8   issues and facts and are therefore "related" for transfer

9   purposes.  The CAC asserts several identical claims arising out

10  of the same merger transaction that forms the basis for this case

11  against defendants FPA, certain of FPA's top officers and

12  directors, FPA's largest stockholder, Foundation Health Systems,

13  Inc., and Deloitte & Touche, LLP. (CAC, ¶1).  The CAC purports to

14  represent in the consolidated cases all individuals who "acquired

15  FPA common stock issued pursuant to a Registration Statement on

16  or about 3/21/98, in connection with FPA's acquisition of Orange

17  Coast Managed Care Services, Inc., and St. Joseph Medical

18  Corporation."  (CAC ¶11(b)).

19          Plaintiffs argue that the claims in the consolidated

20  cases involve damages suffered "in reliance on the integrity of

21  the market" (CAC ¶179), but that the claims here are based on

22  privately made misrepresentations of fact in the process of the

23  "off-market" merger transaction.

24          The CAC accuses D&T based on opinions given on FPA's

25  1996 and/or 1997 financial statements in FPA's 1996 and 1997 Form

26  10-K reports and Annual Reports and in several Prospectuses and

27  Proxy Statements issued in connection with acquisitions of

28  several companies, including OCMCS and SJMC (CAC ¶14).  Further,

1  the CAC alleges that the individual FPA defendants, including

2  those individual FPA defendants in this case, are responsible for

3  multiple false statements including those stated in ¶¶17, 19-24,

4  29-33, 40-42, 44-48, 50-52, 54-56, 58-59, 61, 63-69, 71, 73-84,

5  85-92, 96-107, 109-117, 119-134 and 136-138.  (CAC ¶13).  These

6  statements regarded FPA's reported growing operating earnings;

7  falsification of financial statements; misstatements on press

8  releases; transitions in upper level management; improper

9  adjustments in the acquisitions of several companies, including

10  OCMCS (¶50); accounting improprieties; misrepresentations and

11  statements made to Oppenheimer, Merrill Lynch, UBS Securities,

12  Needham & Co., the MSNBC Private Financial Network, Bear Stearns,

13  the New York Times, Bloomberg, security analysts, money and

14  portfolio managers, institutional investors and large FPA

15  shareholders, and at the Volpe Brown Whelen & Co. Healthcare

16  Conference in New York City on April 21, 1997.

17       The Complaint in the instant action states that the

18  merger agreement would not have been consummated absent the

19  misrepresentations of the financial condition of FPA represented

20  in FPA's financial statements and D&T's misleading audit opinions

21  which violated Generally Accepted Auditing Standards and

22  Generally Accepted Accounting Principles.  (Complaint, ¶16).

23  The Complaint cites the Registration Statement, Prospectus,

24  Annual Reports, Quarterly Reports, and Current Reports, audited

25  balance sheets, Proxy Statement, as well as material

26  misrepresentations made in the Merger Agreement and by the

27  individual defendants directly to representatives of OCMCS and

28  SJMC regarding the financial position, forecasts, market price,

accounting procedures, and the accuracy of the SEC filings.
(Complaint, ¶¶21-23; 27-40).

The consolidated cases share a common nucleus of
operative facts with this action.  In both cases, the issue
surrounds the "purchase" of FPA securities.  An exchange of
securities in connection with a corporate merger is a "purchase"
of securities.  <u>Dasho v. Susquehanna Corp.</u>, 380 F. 2d at 266-67;
<u>Bredehoeft v. Cornell</u>, 260 F. Supp. 557, 559 (D.Or. 1966).

Both the CAC and the Complaint in this action allege
that the officers and directors of FPA, as well as D&T
artificially inflated FPA's stock price in 1997 and 1998 by means
of various false statements and omissions in public documents and
directly to the plaintiffs or investors.  Although this case
deals with representations made in relation to a specific merger
transaction, and deals with the additional liability of Volpe
Brown Whelan & Company as the investment banking firm acting as
the financial advisor for FPA, it deals with representations made
reflecting the financial condition of FPA on the market and
filings made to the SEC.  Further, both complaints allege that
belated disclosures of FPA's perilous financial condition caused
the company's stock price to drop dramatically, that FPA filed
for bankruptcy, and that FPA stock is now essentially worthless.

"Where two related actions 'hinge upon the same factual
nuclei,' transfer is warranted."  <u>Coultman</u>, 857 F. Supp at 235.
The "relatedness" here is similar to that warranting transfer in
<u>Steinhardt Partners v. Smith Barney</u>, 716 F. Supp. 93 (S.D.N.Y.
1989).  In that case, there were several related securities class
actions against the same defendants, who were based in the

1  transferee district.  Even though the plaintiffs resided in, and

2  all of their documentary evidence was located in, the transferor

3  district, the court transferred the action, because it "placed

4  great weight on the fact that a related class action is pending

5  [in the transferee district]." Id. at 95.

6  　　　Whether or not this action is ultimately consolidated

7  with the other pending cases, transfer is warranted "because of

8  the positive effects [a transfer] might have in possible

9  consolidation of discovery and convenience to witnesses and

10  parties." A.J. Industries Inc. v. U.S. District Court, 503 F.2d

11  384, 389 (9th Cir. 1974).

12  　　　　3.  Transfer to the Southern District is in the

13  　　　　　　interests of justice.

14  　　　The Court must consider what serves the convenience of

15  the parties and witnesses and what is in the interests of

16  justice.  28 U.S.C. §1404(a); see also, Stewart Organization,

17  Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  The plaintiffs'

18  choice of venue "should not be lightly disturbed." Los Angeles

19  Memorial Coliseum Commission v. National Football League, 89

20  F.R.D. 497, 499 (C.D. Cal. 1981).  In fact, a plaintiffs' choice

21  of forum is accorded substantial weight in venue transfer

22  decisions.  Securities Investor Protection Corp. v. Vigman, 764

23  F.2d 1309, 1317 (9th Cir. 1985).  In deciding what is in the

24  "interests of justice" the court must balance the plaintiffs'

25  choice of forum against a series of "private interest factors"

26  and "public interest factors." See, Hi-Pac, Ltd. v. Avoset

27  Corp., 980 F. Supp. 1134, 1140 (D. Haw. 1997).

28  //

1    After due consideration of the relevant factors, the
2 Court finds that it is in the interests of justice to transfer
3 this case to the Southern District of California.  Transfer would
4 likely avoid much duplication of effort and the risk of
5 inconsistent outcomes, and transfer will best serve the
6 convenience of the parties and witnesses.

7    As noted, these cases share common factual issues
8 relating to the deterioration of FPA's financial condition and
9 various parties' knowledge of that deterioration, causation and
10 damages, and the CAC specifically addresses the merger that is
11 the focus of this case as well as asserts claims on behalf of the
12 plaintiffs in the instant action and any other individuals who
13 "acquired FPA common stock issued pursuant to a Registration
14 Statement on or about 3/21/98, in connection with FPA's
15 acquisition of Orange Coast Managed Care Services In., and St.
16 Joseph Medical Corporation."  Although plaintiffs Gary Mackie and
17 Igal Silber state that they wish to dissociate themselves from
18 the consolidated cases and to assert their claims in this action,
19 it is not clear they have effectively withdrawn from the
20 consolidated cases, and no orders of dismissal have been
21 presented.

22    The economies and benefits that would result from
23 transfer do not depend on consolidation.  In A.J. Industries, the
24 Court of Appeals for the Ninth Circuit rejected the notion that
25 consolidation had to be assured in order for this consideration
26 to factor into the transfer decision.  The Ninth Circuit found
27 that "[t]o hold that the pendency of an action between the
28 parties in another district could not be considered unless the

21

1 action could be consolidated would unnecessarily limit the
2 factors that should be considered in making a transfer
3 determination and would require a good deal of speculation by the
4 transferor court." 503 F.2d at 389.  Transfer may be warranted if
5 it will aid in coordination of related proceedings, whether or
6 not the cases are eligible for consolidation.  A.J. Industries
7 Inc., 503 F. 2d at 389.  In this case, the risk of duplication
8 and inconsistency would also be lower before a single judge.

9      Finally, transfer to the Southern District will serve
10 the convenience of the parties and witnesses.  As the locations
11 are proximate, the physical transfer of this case from Santa Ana
12 to San Diego would have a negligible effect on convenience, but
13 the opportunities for coordination with related litigation would
14 have a substantial positive effect.  These positive effects
15 should work to the benefit of the parties and the courts.

16 **IV.**

17 **CONCLUSION**

18      Accordingly and for the foregoing reasons, the Court
19 denies plaintiffs' motion to remand, and grants defendants'
20 motion to transfer.  The Court does not reach defendant Volpe's
21 motion to dismiss.

22      IT IS SO ORDERED.

23      IT IS FURTHER ORDERED that the Clerk shall serve a copy
24 of this Order on all counsel of record.

25      Dated:   July 19, 1999.

27                  ALICEMARIE H. STOTLER
UNITED STATES DISTRICT JUDGE

28 G:\DOCS\AHSCOMMO\1aab\ORDERS\Madden-Rem&Trans-Mtd.ORD.wpd